## MBPXL CORPORATION *v.* FIRST NATIONAL BANK OF SILOAM SPRINGS, et al

79-13                                            583 S.W. 2d 18

Opinion delivered June 25, 1979
(In Banc)

*Gilker & Swan,* and *Richard D. Ries,* for appellant.

*Jones, Gilbreath & Jones,* for appellees.

JOHN I. PURTLE, Justice. On April 5, 1975, appellant issued its check payable to Donald L. Nelsen in the amount of $27,939.22. On April 11, 1975, G. A. Boucher endorsed Nelsen's name, after executing an affidavit that he was authorized to endorse the check, with appellee bank and deposited the proceeds in an account owned by Nelsen and Boucher. May 28, 1975, Nelsen notified appellee that Boucher was not authorized to endorse his name on the check. In order to try to settle the dispute between Nelsen and Boucher and determine its responsibility in the matter, appellee filed a Bill of Interpleader in the Benton County Chancery Court on June 4, 1975. On the same day the chancery court granted a release from liability to appellee pursuant to Ark. Stat. Ann. § 27-816 (Repl. 1962). Donald L. Nelsen and G. A. Boucher, as well as N & B Ranch Corpora-

tion, in which they were the principal stockholders, entered into a stipulation and agreement in the interpleader action whereby they settled their dispute and the assets and liabilities of N & B Ranch Corporation were distributed between them. Part of the agreement required Nelsen to assume liability for the $27,939.22 check which had been endorsed by Boucher. Thereafter, on June 18, 1975, Nelsen, after stating Boucher forged his endorsement, persuaded appellant to issue a second check in the same amount as the one which Boucher had endorsed and deposited. Chase Manhattan Bank charged appellant's account with both checks and refused to recredit appellant's account with either check because appellee rejected Chase's demand for recourse on the first check which had been endorsed by Boucher.

On January 5, 1978, appellant filed suit in the Benton County Circuit Court against appellee (First National Bank of Siloam Springs) and Don (Donald) L. Nelsen to recover the proceeds of the first check which Boucher had endorsed. Appellant alleged appellee was liable for a forged check endorsement pursuant to Ark. Stat. Ann. § 85-3-417 and in the alternative Nelsen was liable for conversion of the proceeds of the check on the grounds he had misrepresented that his endorsement on the check was forged. Nelsen defaulted and judgment was entered against him on February 22, 1978, for the sum of $27,939.22, plus interest and costs. Appellee defended the action and cross-complained against Nelsen and Boucher. On April 4, 1978, after the issues were joined and interrogatories and request for admission were filed and answered, appellee filed a motion for summary judgment. In support of the motion for summary judgment appellee relied upon the response to interrogatories and request for admission, as well as the affidavit of Boucher that he was authorized to endorse the check which was payable to Nelsen. Appellant opposed the motion and introduced the affidavit of Nelsen that Boucher forged Nelsen's name. Therefore, there were filed two affidavits stating facts which were in direct conflict. In granting the motion for a summary judgment the court assumed there was a forgery of the first check but held it was immaterial to the decision inasmuch as negligence on the part of appellant in issuing the second check was the proximate cause of its loss and therefore appellant was barred

from recovery against appellee. From the judgment granting appellee's motion for a summary judgment appellant appeals to this Court.

We should mention that neither the payee bank nor the drawer of the check was made a party to the interpleader action nor were they notified of the results. The drawer did not notify the depository bank before issuing the second check.

Since this case was decided by summary judgment, we first must consider whether it was proper to do so. Without citing authority, which we deem unnecessary, we state that if there are any reasonable grounds upon which fair minded persons might differ left before the court after the evidence, pleadings and affidavits are received then a summary judgment should not be granted. In the present case we have the affidavit of Nelsen stating Boucher was not authorized to endorse the check and the affidavit of Boucher stating he had such authority. Therefore, there was an unresolved issue of fact before the court as to whether the check was forged or not. If it were not a forgery, the ultimate results would probably be different than if it were a forgery. The trial court assumed a forgery in an obvious good faith attempt to resolve the ultimate decision without the necessity of a complete and costly trial. We believe this constituted error in spite of the sincere effort to resolve the matter.

We do not decide the matter of liability pursuant to the Uniform Commercial Code because it must first be determined if there were a forgery. The cases are in conflict as to whether the depository bank is liable to the drawer except in restrictive endorsement situations. *Underpinning & Foundation Construction, Inc.* v. *Chase Manhattan Bank, N.A.*, (N.Y. Ct. of App., February 8, 1979), 25 UCC Reporting Service 1104. If there were no forgery then the damage in this case was a result of the second draft being issued as recited in the trial court's decision. There is no claim so far as the record shows that the second check was forged. If there were a forgery in the second check, then it is obvious there could have been negligence by the drawer which substantially contributed to the forgery. We do not have the benefit of all the facts surrounding the issuance of the checks by the drawer and

therefore cannot make a decision relating to whether there were negligent acts contributing substantially to the forgery, if there were a forgery. It is possible the issuance of a check could contribute to a forgery but the facts of the case would be determinative.

Under the facts as presented, we reverse the summary judgment and remand the case to the trial court to determine whether there was a forgery and, if so, did the drawer substantially contribute to the making of the endorsement. We do not preclude the court from considering other facts which may come before it or allowing amendments to the pleadings or bringing in additional parties to this case.

Reversed and remanded.

HARRIS, C.J., BYRD and HICKMAN, JJ, dissent.

CONLEY BYRD, Justice, dissenting. The law under which appellant MBPXL Corporation seeks to hold liable the First National Bank of Siloam Springs is the Uniform Commercial Code, Ark. Stat. Ann. § 85-3-417(2) (Add. 1961), which provides:

> "(2) Any person who transfers an instrument and receives consideration warrants to his transferee and if the transfer is by indorsement to any subsequent holder who takes the instrument in good faith that:
>
> . . .
>
> (b) all signatures are genuine or authorized; . . ."

In connection with liabilities for forgeries and unauthorized signatures, the Uniform Commercial Code, Ark. Stat. Ann. § 85-3-404 (Add. 1961) also provides:

> "(1) Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it; but it operates as the signature of the unauthorized signer in favor of any person who in good faith pays the instrument or takes it for value.

(2) Any unauthorized signature may be ratified for all purposes of this Article [chapter]. Such ratification does not of itself affect any rights of the person ratifying against the actual signer."

In addition to the facts mentioned in the first paragraph of the majority opinion, MBPXL Corporation admitted that if it had checked with the First National Bank of Siloam Springs, when Nelsen presented his affidavit to it, that it would not have issued the second check to Nelsen.

Now in view of the fact that a bank is protected under Ark. Stat. Ann. § 85-3-417(2), not only when the signature to a check is genuine but also when it is authorized, I fail to see how any person can issue a second check for an alleged forged check without first checking with the person who allegedly took the forged signature.

The rights of a payee of a check against the maker should never be any greater than his rights against the person who allegedly forged the check. Nelsen by his written agreement with Boucher certainly by law ratified Boucher's conduct in endorsing the check and thereafter had no right of action against Boucher for the alleged forgery.

Nor does it matter that neither MBPXL Corporation nor its bank, the Chase Manhattan, were made parties to the interpleader action. If Nelsen prior to the receipt of the check had left written authorization with the First National Bank of Siloam Springs to cash the check of MBPXL Corporation upon its presentation by Boucher, and Nelsen had subsequently made the same affidavit to MBPXL Corporation and obtained a second check, no one would contend that the First National Bank of Siloam Springs would be liable to MBPXL Corporation because neither it nor its bank, the Chase Manhattan, were notified of the prior written authorization of Nelsen. What is the difference between written authorization to the bank here involved and any written authorization prior to receipt of the check, so long as the First National Bank holds such authorization before MBPXL Corporation was called upon to issue the second check? I submit that un-

der the Uniform Commercial Code there should be no difference.

For the reasons herein stated, I respectfully dissent.

HARRIS, C.J., and HICKMAN, J., join in this dissent.